**In re James B. WILLIAMS, Jr., a/k/a JB Williams, Debtor.**

**No. 3:09–bk–586–PMG.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 31, 2010.

542

Michael T. Bowlus, Ford, Bowlus, et al., Jacksonville, FL, for Debtor.

## ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS

PAUL M. GLENN, Chief Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Objection to Claim of Exemptions filed by Gregory K. Crews, as Chapter 7 Trustee.

In 1989, the Debtor's mother executed a Warranty Deed transferring certain real property (the Home) to the Debtor, subject to a life estate reserved for herself. The Debtor resides in the Home with his wife and mother. The issue in this case is whether the Debtor is entitled to claim his remainder interest in the Home as exempt pursuant to article X, section 4 of the Florida Constitution.

### Background

The Debtor, James B. Williams, Jr., and his nondebtor wife, Karen Williams, have been married for forty-three years. (Transcript, p. 17).

In the 1970's, the Debtor's mother and father purchased two adjacent lots in Melrose, Florida. The street addresses of the lots are 256 Swan Lake Drive and 258 Swan Lake Drive. The Debtor's parents built their residence on the lot known as 256 Swan Lake Drive (the Home) shortly after they acquired the property. The septic tank for the Home, however, is situated on the lot located at 258 Swan Lake Drive, and the garage for the Home is situated between the two lots. (Transcript, pp. 10, 13–14, 17–19).

The Debtor's parents lived in the Home until the Debtor's father passed away in 1979, and the Debtor's mother has lived in

the Home continuously since her husband's death. (Transcript, p. 9).

In 1989, the Debtor's mother executed a Warranty Deed transferring the Home to the Debtor, subject to a life estate reserved for herself. (Trustee's Exhibit 3).

On April 25, 2003, the Debtor's mother executed a Warranty Deed transferring the lot known as 258 Swan Lake Drive to the Debtor and his wife, Karen Williams, subject to a life estate reserved for herself. (Doc. 30, Exhibit A).

In May of 2008, the Debtor and his wife moved into the Home, and currently reside there with the Debtor's mother. (Transcript, pp. 9, 17). The Debtor's mother is eighty-three years old, and the Debtor and his wife provide the Debtor's mother with daily living assistance. (Transcript, pp. 12, 18).

The Debtor maintains the Home, is responsible for all major decisions regarding the Home, and contributes financially to the repairs and renovations that are made to the property. (Transcript, pp. 9–11, 18). The Home is listed as the Debtor's residence on his driver's license, and the Debtor and his wife receive all of their mail at the Home. The Debtor has no other residential address. (Transcript, pp. 12, 19).

On January 30, 2009, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The Debtor claimed his interest in the lot located at 258 Swan Lake Drive as exempt property owned with his wife as tenants by the entireties. The Trustee does not object to the exemption claimed for 258 Swan Lake Drive. (Transcript, p. 5).

The Debtor claimed his interest in the Home as exempt pursuant to article X, section 4 of the Florida Constitution.

The Trustee filed an Objection to the Debtor's claim of exemption. In the Objection, the Trustee asserts that the Debtor's interest in the Home "is a remainder interest. Since persons who hold a remainder interest have no present right of possession, the property does not qualify for homestead exemption." (Doc. 15).

## Discussion

The issue in this case is whether the Debtor is entitled to claim his remainder interest in the Home as exempt pursuant to article X, section 4 of the Florida Constitution.

Article X, section 4(a) of the Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following *property owned by a natural person:* [ 1]

(1) *a homestead,* if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, . . .; or if located within a municipality, to the extent of one-half acre of contiguous land, *upon which the exemption shall be limited to the residence of the owner or the owner's family.*

Fla. Const. art. X, § 4(a)(1)(Emphasis supplied).

---

1. In 1984, the Florida Constitution was amended to substitute the term "a natural person" for the term "the head of a family."

■ Florida courts consistently hold that the homestead exemption "should be liberally construed in favor of protecting the family home and those whom it was designed to protect." *Southern Walls, Inc. v. Stilwell Corporation,* 810 So.2d 566, 569–70 (Fla. 5th DCA 2002). See also *Coy v. Mango Bay Property and Investments, Inc.,* 963 So.2d 873, 876 (Fla. 4th DCA 2007). The purpose of the homestead exemption "is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors." *Snyder v. Davis,* 699 So.2d 999, 1002 (Fla.1997).

### I. Property owned by a natural person

Pursuant to article X, section 4 of the Florida Constitution, property must be "owned by a natural person" in order to qualify as exempt homestead. Generally, however, the ownership requirement under the Constitution is expansively construed.

■ Although the Constitution "quantifies the amount of real property that may encompass a homestead, it does not define 'owned.' In other words, it does not designate how title to the property is to be held and it does not limit the estate that must be owned, i.e., fee simple, life estate, or some lesser interest." *Southern Walls, Inc. v. Stilwell Corporation,* 810 So.2d at 569(quoted in *Callava v. Feinberg,* 864 So.2d 429, 431 (Fla. 3d DCA 2003)). Consequently, the constitutional exemption attaches to "any estate in land" owned by a natural person residing in Florida. *Southern Walls,* 810 So.2d at 570(quoting *Coleman v. Williams,* 146 Fla. 45, 200 So. 207 (1941)). The "homestead exemption provided for under the Florida Constitution makes no distinction between the types of ownership interests in land that qualify for

the exemption, and has been interpreted as applying to *any interest* in land." *In re Ballato,* 318 B.R. 205, 209 (Bankr.M.D.Fla.2004)(Emphasis supplied).

In this case, the Debtor holds a vested remainder in the Home. In contrast to a contingent remainder, which is granted to a person not yet born, a vested remainder is a remainder interest held by a living person. *In re Estate of Rentz,* 152 So.2d 480, 483 (Fla. 3d DCA 1963).

A vested remainder is a property interest that is recognized under Florida law. Section 732.401 of the Florida Statutes, for example, provides:

**Chapter 732. Probate Code: Intestate Succession and Wills**

**Part IV. Exempt Property and Allowances**

**732.401. Descent of homestead**

(1) If not devised as permitted by law and the Florida Constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and one or more descendants, the surviving spouse shall take a life estate in the homestead, *with a vested remainder to the descendants in being* at the time of the decedent's death per stirpes.

Fla. Stat. 732.401(1)(Emphasis supplied).

Further, in addition to receiving statutory recognition, vested remainders are also viewed as property interests that are entitled to protection under Florida law. See *Schneberger v. Schneberger,* 979 So.2d 981, 983 (Fla. 4th DCA 2008)(Under Florida law, a life tenant is not permitted to diminish the value of the property to the detriment of the remainderman.).

Additionally, in certain circumstances possession of the property has been determined to be an interest sufficient to be protected. "[E]ven if she merely retained possession of the land, it is of sufficient

value to her to have it protected under the homestead law, and it is of no concern to the creditor that another has the superior title." *Hill v. First National Bank of Marianna,* 73 Fla. 1092, 75 So. 614, 617 (1917). See, also, *Bessemer Properties, Inc. v. Gamble,* 158 Fla. 38, 27 So.2d 832 (1946).

Given the broad interpretation of "ownership" under the Constitution, the recognition of vested remainders as property interests under Florida law, and the determination in certain circumstances that possession is a sufficient interest, the Court finds that the Home is "property owned by a natural person" within the meaning of article X, section 4 of the Florida Constitution.

## II. The residence of the owner

Pursuant to article X, section 4 of the Florida Constitution, property must also be the "the residence of the owner or the owner's family" in order to qualify as exempt homestead.

In this case, it appears undisputed that the Debtor resides in the Home with his wife and mother. The Debtor and the Debtor's wife testified in detail as to their residence in the Home, and the testimony was uncontested by the Trustee. The evidence shows, for example, that the Debtor and his wife have lived in the Home since May of 2008, that the Debtor and his wife care for the Debtor's mother (the life tenant) in the Home, and that the Debtor has no other residential address. (Transcript, pp. 9–19).

Because the Debtor is the holder of a remainder interest that is subject to his mother's life estate, however, the Trustee contends that he has "no present right of possession," and that the Home therefore does not qualify as exempt homestead under the Constitution.

## A. *Aetna*

The Trustee relies primarily on the decision of the Florida Supreme Court in *Aetna Insurance Company v. LaGasse,* 223 So.2d 727 (Fla.1969) to support his position that the Debtor lacks a sufficient possessory interest to qualify the Home for the constitutional exemption.

*Aetna* arose in a limited factual context, and involved a priority dispute between a judgment debtor and a judgment creditor. Specifically, Aetna had obtained and recorded a judgment against the debtor in 1961. Four years later, in April of 1965, the debtor's father died, leaving the debtor a remainder interest in the family home, subject to her mother's life estate. Shortly after her father's death, the debtor moved into the home to care for her mother. In September of 1965, the debtor's mother died, and Aetna sought a declaration that its prior judgment lien was superior to the debtor's claim that the property was exempt homestead. *LaGasse v. Aetna Insurance Company,* 213 So.2d 454, 455–56 (Fla. 2d DCA 1968).

The Supreme Court of Florida ultimately determined that Aetna's prior judgment lien was entitled to priority over the debtor's homestead claim. In reaching this decision, the Court found:

> [A]t the death of respondent's father, when she became vested with the remainderman's title to which the prior recorded judgment lien attached, her surviving mother had the right of occupancy and use essential to a homestead claim:

>> 'By great weight of precedent a claim of homestead may not attach to either vested or contingent future estates or interests in land, because a remainder expectant upon cessation of a preceding estate creates no present right to possession.'

*Aetna Insurance Company v. LaGasse,* 223 So.2d at 729(quoting *Anemaet v. Martin–Senour Company,* 114 So.2d 23, 27 (1959)). The Court further determined that the debtor's subsequent occupancy of the property did not impact the superior position of Aetna's prior judgment lien. *Aetna,* 223 So.2d at 729. Several Courts since *Aetna* have relied on this language regarding possession and occupancy to disallow a remainderman's claim that his interest was exempt homestead. See, for example, *In re Plaster,* 271 B.R. 202 (Bankr.M.D.Fla.2001) and *In re Lewis,* 226 B.R. 703 (Bankr.N.D.Fla.1998).

Clearly, the Court's decision in *Aetna* was based in part on the possessory rights associated with the debtor's remainder interest. The primary issue in Aetna, however, involved the relative priority as between Aetna's prior judgment lien and the debtor's constitutional homestead claim. *LaGasse v. Aetna,* 213 So.2d at 456("The whole controversy here is governed by the determination of precedence as between a constitutional homestead and a judgment lien.").

Such a determination is readily distinguishable from the issue in the case presently before the Court. In *Aetna,* the creditor's judgment was recorded before the debtor acquired her remainder interest in the property, and the debtor held her remainder interest for a period of time before she began to occupy the property as her residence. Consequently, the case invoked the rule that homestead property is "subject to levy under judgments recorded prior to the time such property became the homestead of the judgment debtor." In fact, the Court expressly assumed that Aetna's judgment lien attached to the vested remainder interest at the time that it was acquired by the debtor, before she began to occupy the property

as her homestead. *Aetna,* 223 So.2d at 728.

In the case currently before the Court, on the other hand, the Debtor acquired his remainder interest in the Home in 1989, and has resided in the Home since May of 2008. The Debtor filed his petition under Chapter 7 of the Bankruptcy Code on January 30, 2009, and claimed the Home as exempt on his bankruptcy schedules. No individual creditor has objected to the claim of homestead on the basis of a prior recorded judgment, and the Court has not been asked to resolve a priority dispute between the Debtor and a prior lien creditor. Instead, the Chapter 7 Trustee objects to the claim of exemption, and asserts that the Home does not qualify for the constitutional exemption because the Debtor has no present right to possess the property.

As acknowledged by the Trustee, the issue in this case is not a priority dispute, but instead involves whether the Debtor's interest in the Home is exempt from property of his bankruptcy estate. (Transcript, p. 21).

### B. *Anemaet*

In *Anemaet v. Martin–Senour Company,* 114 So.2d 23 (Fla. 2d DCA 1959), the court concluded that the remainder interest did not qualify for homestead protection, but in that case the remainderman did not live on the lot under consideration.

### C. The petition date

Pursuant to § 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate. Generally, § 541(a) provides that the commencement of a case creates an estate that includes "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(Emphasis supplied).

"An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

■ As a general rule, "the petition date is the relevant date for determining a debtor's entitlement to claim an exemption." *In re Hunter,* 1994 WL 16005197, at 3 (Bankr.S.D.Ga.)(citing *In re Johnson,* 165 B.R. 524, 528 (Bankr.S.D.Ga.1994) for the fundamental concept that the petition date is the "watershed date" of a bankruptcy case.). See also *In re Ballato,* 318 B.R. 205, 209 (Bankr.M.D.Fla.2004)(In a converted case, a claim of exemption is determined as of the date of the original petition, and not the date of conversion.).

## D. Application

■ The Court has considered the possessory rights at issue in this case, and finds that the Home was the "residence of the owner or the owner's family" on the petition date. The Debtor's interest in the Home satisfies the requirements for exempt homestead under article X, section 4 of the Florida Constitution.

The Trustee does not contend that the Debtor conducts a business on a severable portion of the property, or that the Debtor has abandoned the Home by relinquishing possession and discontinuing the use of the property as his home. *In re Ballato,* 318 B.R. at 210. Nor does the Trustee assert that the Debtor leases any portion of the property, thereby destroying "the residency aspect of the homestead." *In re McLachlan,* 266 B.R. 220, 221 (Bankr.M.D.Fla.2001)(citing *In re Nofsinger,* 221 B.R. 1018, 1021 (Bankr.S.D.Fla. 1998)).

Instead, the Trustee asserts only that the Debtor has "no present right of possession" of the Home based on his status as remainderman. (Doc. 15).

The evidence presented in this case, however, shows that the Home is family property acquired by the Debtor's parents in the 1970's. (Transcript, p. 17). The property was initially purchased as two adjacent lots, and the Debtor, his wife, and his parents built the house on one lot (the Home) from "the first shovel full of dirt to the last shingle." (Transcript, pp. 10, 17). The Debtor and his wife hold a remainder interest in the adjacent lot as tenants by the entireties. A portion of the Home's garage, and the Home's septic tank, storage shed, and irrigation system are situated on the adjacent lot in which the Debtor and his wife hold the remainder interest. (Transcript, pp. 10, 13–14, 19).

The Debtor and his wife moved into the Home in May of 2008, and currently reside there with the Debtor's mother. (Transcript, pp. 9, 17). The Debtor's mother is eighty-three years old, and the Debtor provides his mother, the life tenant, with daily living assistance in the Home.

The Debtor maintains the Home, is responsible for all major decisions regarding the Home, and contributes financially to the repairs and renovations that are made to the property. (Transcript, pp. 9–11, 18). The Home is listed as the Debtor's residence on his driver's license, and the Debtor and his wife receive all of their mail at the Home. The Debtor has no other residential address. (Transcript, pp. 12, 19).

Finally, the Home (256 Swan Lake Drive) was listed as the Debtor's address on his bankruptcy petition, and has remained his address of record throughout the bankruptcy case.

Based on the Debtor's family ties to the Home, his occupancy of the Home, his personal and financial contributions to the home, and the evidence indicating the permanence of his occupancy, the Court finds that the Debtor has a "present right of possession" sufficient to qualify the Home as exempt homestead. The Home is the residence of the Debtor within the meaning of article X, section 4 of the Florida Constitution.

### D. Policy

■ Allowance of the homestead exemption to remaindermen who occupy the property as their home in circumstances such as this is consistent with the Constitution's emphasis on the residential use of exempt property. "The availability of the homestead exemption is not dependent upon any strict or legalistic interpretation of the quality and nature of the property or of the quality of the debtor's title. The Court must instead focus on the circumstances and the debtor's intent to make the property his homestead and the debtor's actual use of the property as his principal and primary residence." *In re Dean*, 177 B.R. 727, 729 (Bankr.S.D.Fla.1995). "[E]ven if she merely retained possession of the land, it is of sufficient value to her to have it protected under the homestead law, and it is of no concern to the creditor that another has the superior title." *Hill v. First National Bank of Marianna*, 73 Fla. 1092, 75 So. 614, 617 (1917). "Actual 'family' occupancy and the intention to continue occupying the home have been held to be the key qualifications for homestead status and the protections deriving from that status under the Florida Constitution." *Edward Leasing Corporation v. Uhlig*, 652 F.Supp. 1409, 1412 (S.D.Fla. 1987). See also *Southern Walls, Inc. v. Stilwell Corporation*, 810 So.2d at 572.

Allowance of the homestead exemption to remaindermen who reside on the property in circumstances such as this is also consistent with the historically liberal construction of the exemption which favors the protection of the family home. *Southern Walls*, 810 So.2d at 569–70. The allowance promotes the constitutional purpose of securing a home to the householder, so that the homeowner and his family can live beyond the reach of financial misfortune. *Snyder v. Davis*, 699 So.2d at 1002.

### E. Other jurisdictions

Finally, it is also noteworthy that Courts in other jurisdictions have allowed remaindermen to exempt their interests in property on which they resided. In *In re Cain*, 235 B.R. 812 (Bankr.M.D.N.C.1998), for example, the Court allowed a remainderman to claim a homestead exemption for property in which he had resided for a year. In construing North Carolina law, the Court stated:

> There is nothing in the statute which explicitly precludes the exemption claimed by the Debtor. Under the wording of the statute the Debtor must own *an interest* in the real or personal property in which the exemption is claimed. There is no limitation or restriction in the statute regarding the nature or extent of the interest which must be owned.... The next requirement under the statute is that the real or personal property in which the debtor owns an interest must be used as a residence by the debtor or a dependent of the debtor. This is the only requirement under the statute which is related to possession of the property and the only possessory interest required is that either the debtor or a dependent of the debtor use the property as a residence. *There is nothing in the statutory language which requires that the debtor's*

*use of the property be a matter of right based upon the debtor being the sole owner of a fee simple absolute title to the property.*

*In re Cain,* 235 B.R. at 816–17(Emphasis supplied). See also *In re Kimble,* 344 B.R. 546 (Bankr.S.D.Ohio 2006)(the debtor's remainder interest in property occupied under an oral lease with his mother qualifies for the exemption provided under Ohio's homestead law), and *In re Eskew,* 233 B.R. 708 (Bankr.W.D.Texas 1998)(the debtors' reversionary interest in their residential property was properly claimed as exempt under Texas homestead law).

### Conclusion

The issue in this case is whether the Debtor is entitled to claim his remainder interest in the Home as exempt homestead pursuant to article X, section 4 of the Florida Constitution. The Court finds that the exemption should be allowed.

First, property in which a debtor holds a vested remainder is "property owned by a natural person" within the meaning of the Constitutional exemption.

Second, under the circumstances of this case, where the Debtor occupies the family Home, and where the evidence establishes the permanence of his occupancy, the Court finds that the Home is the "residence" of the Debtor within the meaning of article X, section 4 of the Florida Constitution.

Accordingly:

**IT IS ORDERED** that:

1. The Objection to Claim of Exemptions filed by Gregory K. Crews, as Chapter 7 Trustee, is overruled.

2. The Debtor's claim of exemption with respect to his remainder interest in

the property located at 256 Swan Lake Drive, Melrose, Florida, is allowed.